## Case No. 2,180.

### BURNHAM v. WINSOR.

[5 Law Rep. 507.]

District Court, D. Massachusetts. Jan., 1843.

STOPPAGE IN TRANSITU—GOODS IN CUSTOMHOUSE.

1. The possession of goods by officers of the customs prior to entry, is not such a possession of the consignees, as to determine the transit, and defeat the consignor's right to stop them, on the bankruptcy of the consignees.

[Cited in Parker v. Byrnes, Case No. 10,728; Re Bearns, Id. 1,191.]

2. Such right to stop in transitu is not affected by the facts that part payment of the goods had been received; and a draft, intended to cover the balance of the cost, had been presented and accepted after their arrival; and that the consignees were part owners and ship's husbands of the vessel in which they arrived, and not liable to pay freight before taking possession of them; and that the bill of lading had been sent to them only.

3. The act of congress of 1842, c. 20 [270], § 12 [5 Stat. 561], was not intended to alter or define the rights of shippers.

In bankruptcy. The petition, in this case, sets forth the following facts: The petitioner, [Burnham], who resides in Matanzas, in Cuba, in the month of October last, pursuant to previous authority, shipped to [F. & W. H. McLellan] the bankrupts, merchants of Boston, one hundred and fifty boxes of sugar, on joint account of himself and them. The whole cost of the sugars was about $2,500.00, towards the payment for which Burnham applied about $483.00, funds belonging to the McLellans then in his hands, and the residue he purchased with his own means. The sugars were shipped in a vessel of which the McLellans were part owners and ship's husbands, and the bill of lading was sent to them. Against this shipment Burnham drew a draft on the McLellans for about $1,700.00, at sixty days' sight, which was intended to cover the balance of cost of their half above the $483.00 retained by him, and also as an advance on his half of the sugars. The draft arrived in Boston in the same vessel with the sugars, on the fourteenth of November last, and on the same day was presented, by Robert C. Hooper, the agent of Mr. Burnham, to the McLellans, and accepted by them. On the arrival of the vessel, an inspector of the customs took charge of it in the usual manner, and put his locks upon the hatches, whence the sugars were subsequently removed to the government stores, where they remained, without being entered, until the time of the hearing on this petition. On the twenty-first of November, Mr. Hooper, learning that the McLellans were preparing to go into bankruptcy, demanded the whole or half of the sugars for Mr. Burnham; at the same time offering to return the $483.00, and give up the draft. On the twenty-second of November, the McLellans filed their petition in bankruptcy. The petitioner, Burnham, prayed that the whole, or half of the sugars, (as the court should decide his right to be,) might be restored to him, upon his refunding the $483.00 retained, and giving up the draft. [Decree for petitioner.]

F. B. Crowninshield and Charles F. Smith, for petitioner, contended, that this was a case in which the petitioner had a right to stop the goods in transitu; that the transit was not terminated, because the goods had not come into the possession, either actual or constructive, of the consignees; that the possession of the government officers, prior to entry, was not such a possession of the consignees as to determine the transit, notwithstanding the presentment and acceptance of a draft, intended to cover the price, subsequent to the arrival of

the vessel which brought the goods, and the receipt of the bill of lading by the consignees (Northey v. Field, 2 Esp. 613; Nix v. Olive, reported in Abb. Shipp. 393; Abb. Shipp. pt. 3, c. 93, passim); that the right of the consignor to stop goods in transitu was the same, whether he be an agent for others, or the owner and vendor of the goods (Feise v. Wray, 3 East, 93); that the fact, that the consignees were part owners of the vessel, did not create such a possession in them as to determine the transit, prior to entry; and that as to Burnham's one half, he had a right to retake that, even from the possession of the bankrupts, at any time before a bona fide sale (Stubbs v. Lund. 7 Mass. 453; Newhall v. Vargas, 1 Shepley [13 Me.] 93; Abb. Shipp. ut supra); that Act Cong. 1842, c. 20 [270], § 12, was not intended to settle or define the rights of shippers, but was passed alio intuitu.

William Gray, for the respondent [Winsor, assignee], did not deny the right of the petitioner to one half of the sugars; but as to the other half, contended, that the cases of Northey v. Field, and Nix v. Olive, above cited, were mere nisi prius decisions, and that the points there held had never been so decided in this country; that in those cases the drafts were accepted before the arrival of the vessel which carried the goods; that the fact, that in this case they were presented to and accepted by the bankrupts subsequently to such arrival, taken in connection with the facts, that the bankrupts were part owners and ship's husbands, and not liable (in this case) to pay any freight, and that the bill of lading was sent to them only, amounted to a recognition by the consignor of their possession, and a waiver of his right to stop in transitu; that by Act 1842, c. 20 [270], § 12, goods in the possession of the collector, are at the risk of the owner, importer, consignee or agent; and that, as neither of these terms could be applied to Burnham, the possession of the collector was by that statute declared to be the possession of the consignees in this case. Gray cited Henley, Bankr. pp. 321–324, 326, 329, and cases there enumerated, particularly Neate v. Balls [2 East, 117]; also, Archb. Bankr. 235.

SPRAGUE, District Judge, sustained the positions of the counsel for the petitioner, remarking that he acquiesced in the decisions of Northey v. Field, and Nix v. Olive, above cited, which, although made at nisi prius, were made by able judges, and assented to by distinguished counsel, and cited with approbation by Lord Tenterden, in his Treatise on Shipping. He ordered a decree to be entered, that the sugars should be restored to Burnham, or his agent, upon his refunding the $483.00, giving up the draft for $1,700.00 to the assignee, and paying him the freight and charges.