## Hynson *vs.* Burton.

A plea, that since, the commencement of the suit the plaintiff has become a bankrupt is bad—but if the plea were good, a replication, that more than two months before the bankruptcy, the cause of action was *bona fide sold and delivered* to a third person, and the suit was only prosecuted by plaintiff as a mere naked trustee, would be also good.

B, the defendant pleads an insufficient plea; H. the plaintiff relies; B. demurs to the replication; H. may attack the plea.

This was an action of debt determined in the Independence circuit court in August, 1843, before the Hon. Thomas Johnson, one of the circuit judges. Hynson filed his declaration against Burton, on a bond for $2,556 18, executed by him to Hynson, due one day after April 12, 1842; and his affidavit for attachment and bond, on which a writ of attachment issued, and was levied on certain property, and served on divers garnishees. After return amended and motion to set it aside overruled, the defendant filed pleas of payment *post diem* and set off, and a plea of accord and satisfaction, alleging that defendant gave into possession a house and lot which was accepted in satisfaction. Replications and issues to pleas of payment and set off and demurrer to the other plea sustained—and continuance. At August term, 1843, plea against the further maintainance of the suit, that plaintiff, had since the commencement of the suit, become a bankrupt under the act of 1841, and was so declared by the district court of Arkansas, July 24, 1843, by which court Robert Williams was on the same day appointed his assignee, who had given bond and entered on the dischage of his duties, with apt allegations that all Hynson's property and there among the bond sued on had vested in his assignee for the benefit of his creditors. Concurrently with this plea, a motion was filed that the plaintiff give further security on the attachment bond, which was overruled, and the plaintiff replied to the plea of bankruptcy. His replication, as finally amended, alleged that on the 1st of Sept., 1842, before he became a bankrupt, he did, for good and valuable consideration, *sell and deliver* the land sued on, and all his right, interest and property therein to James Pope and William Byers; and that this dealing and transaction was *bona fide* done, more than two months before petition for bankruptcy filed, without notice on the

part of Pope and Byers of his intention to take the benefit of the bankrupt act—alleging that the suit is continued for the benefit of Pope and Byers and that plaintiff is a mere trustee. Demurrer to amennded replication sustained, two grounds being assigned: *First,* That after Pope and Byers became owners of the land, the suit could not be continued: *And second,* That after selling the land to them, Hynson could not continue his action. Judgment for defendant on demurrer and appeal.

*W. Byers,* for appellant. The only point presented to this court for examination is the sufficiency of the plaintiff's replication to defendant's plea that Hynson was a bankrupt, &c.

The replication is good in form and substance. *Story on Pleading* 276. 7 *Went.* 414. *Winch vs. Keeby,* 1 *T. R.* 619.

The replication alleges that the land was sold and delivered by Hynson to Pope and Byers, but does not aver that said bond was assigned or endorsed. By the sale and delivery, Pope and Byers became the owners thereof and equitably entitled to the money when collected. The legal right of action remained in Hynson, and suit was properly brought in his name. He was trustee in this case for Pope and Byers. It has been the practice immemorial in such cases for the payee to bring suit in his own name for the use and benefit of the holder of the bond who was equitably entitled to the proceeds when collected.

*Pike & Baldwin,* contra. The only question presented by the record is, whether the demurrer to the amended replication was properly sustained.

The plea was unquestionably a good one. The third section of the bankrupt act of 1841, chapter 9, declares that all property and rights of property of every bankrupt, who shall, by a decree of the proper court, be declared a bankrupt within the act, shall, by mere operation of law, *ipso facto,* from the time of such decree, be deemed to be divested out of the bankrupt, and vested by force of the decree in the assignee. The assignee takes subject to all the rights and equities of third persons attached to it in the hands of the bankrupt.

*Ex parte Newball* before STORY, J., in the circuit court for *Mass.* 5 *Law Reporter*, 306.

Under the bankrupt act, the bankrupt after decree and whether discharged or not, as to all his property and rights of property, and as to all suits at law or equity pending, in which he was a party, was to be treated as if *civiliter mortuus*, and the assignee considered as his executor or administrator. *Ex parte Foster*, before STORY, J. 5 *Law Reporter*, 71. *In the matter of Cheney*, STORY, J. *Ib.* 19.

This is a good plea in bar against the *further* maintainance of the suit, and so adjudged under the English statutes of bankruptcy. *Krinea vs. Tawant*, 15 *East* 622, where all the cases are reviewed.

The sale and delivery to Pope and Byers, no endorsement being alleged, gave them (if valid) only an equitable interest. That interest attached to the bond in the hands of the assignee. But Hynson, being *civiliter mortuus*, the suit could not proceed. To enforce their equitable rights, Pope and Byers will be compelled to use the name of the assignee.

*By the Court,* SEBASTIAN, J. [At January term, 1844.] The only question which arises on the record is, whether the demurrer to the plaintiff's replication was rightfully sustained by the court.

By the 3d section of the bankrupt act, the decree in bankruptcy, by mere operation of law, divested the plaintiff of all his property and rights of property at the date of the decree and vested it by force of the decree in the assignees appointed by the court for that purpose. *Newball, ex parte,* 5 *Law Rep.* 507. This matter arising since the last continuance of the cause was properly pleaded, and if not denied or avoided, it might be a bar to the further prosecution of the suit *in the name of the bankrupt.* By the same act (sec. 3,) it is further provided "that all suits in law or in equity then pending, in which such bankrupt is a party may be prosecuted and defended by such assignee to its final conclusion, in the same way and with the same effect as they might have been by such bankrupt." And the act further provides that "the assignee so appointed shall be vested with all the rights, titles, powers and authorities to sell, manage and dispose of the property, &c., of the bankrupt, and to sue for and defend the same,

Hynson *vs.* Burton.

&c., as fully to all intents and purposes, as the same were vested in or might be exercised by such bankrupt before or at the time of his bankruptcy." These provisions, says STORY, J., in *ex parte Foster*, 5 *Law Rep*. 71, manifestly contemplates that as to all *property and rights of property* of the bankrupt, and as to all suits in law or equity pending, to which the bankrupt is a party, the bankrupt is to be treated as if he were *civiliter mortuus*, and all his property and rights of property are vested in the assignee, as his executor or administrator. Taking therefore the facts of the plea as true, was it a matter in abatement of the suit? Under the English statutes, the bankruptcy of the plaintiff before action brought, can be pleaded in bar and that is the principle established in 15 *East*, cited by the appellee's counsel; which was a proceeding against bail, and the bankruptcy of plaintiff before suing out *sci. fa.* was pleaded. The action does not abate if commenced by the bankrupt before his bankruptcy, but may be prosecuted in the name of the assignee. 1 *Ch. on Pl.* 15. *Hewitt vs. Mantel*, 2 *Wilson* 372. Whatever may be the effect of such a plea under the English bankrupt acts, we think it clear that under the bankrupt act (sec. 3,) of the United States, no such effect was intended to be given to the decree; but on the contrary the act provides that suits pending, to which the bankrupt is a party "may be prosecuted and defended by such assignee to its final conclusion," &c. This certainly precludes the idea of abatement of the suit; and whether in such case the suit proceeds in the name of the bankrupt, or in that of the assignee, it is unnecessary to determine, as in either view of it, the plea is bad, and the court should have so adjudged it upon demurrer to the replication.

But supposing the plea to be good, we are clearly of opinion that the matter set up in evidence of it is sufficient. The act clearly intended nothing more to pass by the decree to the assignee, than the property and rights of property, either in suits pending or otherwise, belonging to the bankrupt at the time of the decree. The object was to transfer such property to the assignee for the creditors, as belonged to the bankrupt, and no more. Such was the conclusion of STORY, J., in *Newball, ex parte*, 5 *Law Rep.* 308, where he said " I take the clear rule in bankruptcy to be that the assignee takes the

property and rights of property of the bankrupt, subject to all the rights and equities of third persons, which are attached to it in the hands of the bankrupt." At the instant the decree is made, the property and rights of property of the bankrupt vest in the assignee, and are gone beyond the control of the bankrupt. It is in this light that he is said to be *civiliter mortuus*. It is only so between him and the assignee for the creditors. The debtor is not concerned in the relation between them, or how their relative rights are settled. What property or right of property did the plaintiff have in the note sued on: for nothing else could be passed to the assignee. He had only the naked legal title to it, the whole property and beneficial interest having passed to Pope and Byers long before, for a valuable consideration. He held as trustee for them only, and they were substantially and equitably the sole owners of the property in it. They were entitled to sue upon it in name of Hynson, from whom the legal title could not pass, except by assignment. Hynson then had nothing but the naked legal title, which he held as trustee for Pope and Byers. This was not such a property as passed by the decree in bankruptcy, for it could not be available as a fund for the creditors. The rule is well settled that a legal title, without a beneficial interest, does not vest in the assignee; and that where the beneficial interest in a chose in action has been transferred to a third person prior to the bankruptcy, the action must be brought in the name of the bankrupt, and not of the assignee. *Ch. on Pl.* 16. *Carpenter, et al. vs. Marnel,* 3 *B. & P.* 40. *Arden vs. Watkins,* 3 *East R.* 317. In this last case, which was a suit in the name of the assignees of a bankrupt upon a note which he had transfered, but which did not pass the legal interest, Lord ALVANLEY, C. J. said that though the transfer did not pass the legal title, yet by it he passed the beneficial interest in the note and thereby became a mere trustee for him to whom he had sold it, and that the action should have been brought in the name of the bankrupt, who had the legal title and to whom the promise to pay was made. In conclusion he further remarks, "the assignees never were in a situation to derive any advantage from this piece of paper. If indeed they possessed the most remote possibility of interest, or if they could state any thing from which a benefit to the creditors would result, we should hold that

the action might be maintained; but at the time they brought this action, it was impossible for them not to have known that they had no right to the note. They bring this action in the character of trustees, but they are not trustees for the bankrupt's creditors, and cannot bring this action." Such is the case now before us. What good can be effected by abating the action, and bringing it in the name of the assignee. He would then sue as trustee for Hynson's creditors, while the money, when collected, would belong, not to the creditors, but to Pope and Byers, for whom he could not be trustee. We think, therefore, that inasmuch as he held the legal title to the note sued on as a mere trustee for the beneficial owner, that his legal capacity to sue was kept alive in order to support the trust, and did not pass by the decree to the assignee, who by the nature of his office could only be trustee for the creditors.

The judgment of the circuit court must, therefore, be reversed, and the case remanded with instructions to overrule said demurrer for the insufficiency of the defendants plea of bankruptcy, and proceed therein, &c.

*Pike & Baldwin,* for appellant, moved reconsideration, which at July term, 1844, was withdrawn.