## Mays *et al.*, Assignees of Born, *versus* The Manufacturers' National Bank of Philadelphia.

1. An assignment in bankruptcy, no matter when made, takes effect as if it had been made at the commencement of the proceedings.

2. Of such assignment by operation of law, the whole world is bound to take notice.

3. Payment to a bankrupt after filing the petition, although bonâ fide made and without actual notice, is not valid.

4. Born, *after* the filing of a petition against him, deposited in a bank money which was afterwards paid on his checks. *Held,* that the payments were valid.

5. The assignment transfers only the property which the bankrupt owned at the filing of the petition.

6. The earnings and acquisitions of the bankrupt after the commencement of the proceedings are his own, subject to his eventual discharge.

7. If he does not succeed in obtaining his discharge, his subsequent acquisitions remain liable to his creditors.

8. The onus is upon the assignee to prove that the property was the bankrupt's at the commencement of the proceedings.

January 10th 1870. Before Thompson, C. J., Read and Sharswood, JJ. Agnew, J., at Nisi Prius.

Error to the District Court of *Philadelphia :* No. 93, of July Term 1869.

This was an action of assumpsit, brought by Samuel V. Mays and Charles W. Hornor, assignees in bankruptcy of August Born, against The Manufacturers' National Bank of Philadelphia.

On the 31st of January 1868, a petition by a creditor was filed in the District Court of the United States for the Eastern District of Pennsylvania, asking that Born be declared a bankrupt. In an issue, a jury found that he was a bankrupt, and on the 26th of February 1868 he was so adjudged. Due publication of the adjudication was made in accordance with the order of the court; the plaintiffs were appointed assignees on the 28th of March.

This case was tried February 2d 1869, before Greenbank, J., when, in addition to the above facts, the plaintiffs gave in evidence the bank book of Born, in which the first entry was—

"1868, February 6th. Balance from old book, $409.12."

There were other entries of credit up to April 1st, which, with the above balance, amounted on that day to $2616.42, against which Born was charged with a number of checks, commencing February 6th and ending April 4th, when there was in his favor a balance of $29. The checks were given in evidence by the defendant. It was not denied on the trial, that these checks were paid by the bank in good faith, without actual notice or knowledge of the proceedings in bankruptcy against Born.

The plaintiffs submitted a number of points, on which they asked the court to charge the jury. The question raised by them

[Mays v. Manufacturers' National Bank.]

was, whether the payments having been made by the bank on checks of Born after the commencement of the proceedings in bankruptcy were valid. Judge Greenbank refused all the plaintiffs' points, and charged:—

"The question in this case is one of law alone, the facts being undisputed. The point has been decided by this court in banc, on the hearing of the rule for judgment for want of a sufficient affidavit of defence, that the bank not having knowledge or actual notice of the proceedings in bankruptcy of August Born, is not liable to the assignees in bankruptcy for the moneys drawn out by him prior to notice.

"I therefore instruct you, that your verdict may be for the plaintiffs for the balance remaining due, after giving the defendant credit for the amount of the checks given in evidence, drawn by August Born, to wit, the sum of $29, and I decline generally to charge as requested by the plaintiffs."

The verdict was for the plaintiffs for $29. They took a writ of error, and assigned for error, the answer to their points and the charge of the court.

C. W. Hornor, for plaintiffs in error, referred to Bankrupt Act of March 2d 1867, §§ 14, 27, 28, 35, 39, 42, 44, "Acts of Congress," &c. 159, et seq.

The proceedings in bankruptcy are notice to all the world; the assignment relates to the commencement of the proceedings and payments to the bankrupt after that time are illegal: Ex parte Foster, 2 Story 158; Carr v. Gale, 3 Woodb. & M. 67; Bramwell v. Eglinton, Law Rep. 1 Q. B. 494; Exley v. Inglis, Id., 3 Exch. 247. Lis pendens is notice: Taylor v. Carryl, 12 Harris 261.

A. H. Smith, for defendants in error, referred to Bankrupt Act, supra. Such property only as bankrupt has at the time of the assignment, or has been fraudulently conveyed, should pass to the assignees: Dormer v. Brackett (U. S. Dist. Court, Vt.) 5 Law Rep. 392. Only the estate that bankrupt had at the commencement of the proceedings, not that afterwards acquired, should pass: In re Patterson (D. C. U. S. South. Dist. N. Y,) 6 Int. Rev. Record 157; In re Rosenfield (D. C. U. S. N. J.) 15 Pittsburg Leg. Journal 245; Grant's Case, 2 Story C. C. R. 312.

The opinion of the court was delivered, January 24th 1870, by
SHARSWOOD, J.—The counsel for the parties, with all their learning and research, have not been able to produce any decision upon the question, whether where the debtor of a bankrupt, in good faith and without knowledge or notice of the proceedings against him, pays him a debt, he can be compelled to pay it over

again to the assignee? The reason may be that the language of all bankrupt laws, previous to the Act of Congress of March 2d 1867, was such as to preclude the question from arising. In England, by the statute 13 Eliz. c. 7, the property of the bankrupt vested in the commissioners from the time of an act of bankruptcy committed; and payments made by a debtor to a bankrupt, after a secret act of bankruptcy, would under the statute have been void. The injustice of this relation back was so apparent, that Parliament, by the statute 1 Jac. 1, c. 14, made such payments, until notice of the act of bankruptcy, good; but still left payments, after commission issued, as they stood under the statute of Elizabeth. To the present time the law in England rests on the same basis; that all contracts, conveyances and dealings to and with a bankrupt in good faith and without notice before the filing of the petition, are valid: otherwise, after the filing: Eden on Bankruptcy 258; stat. 4 Geo. 4, c. 16, 12 & 13 Vict. c. 106. By the Act of Congress of April 4th 1800, § 13 (1 Story's Laws 737), the commissioners were empowered to assign all the debts due to the bankrupt, which assignment should vest the property and right thereof in the assignee: "Provided, that where a debtor shall have bonâ fide paid his debt to any bankrupt, without notice that such person was bankrupt, he or she shall not be liable to pay the same to the assignee, or assignees." This just and liberal provision was not contained in the Act of Congress of August 19th 1841 (5 Story's Laws 28, 29), but it declared "that all dealings and transactions by and with any bankrupt bonâ fide made and entered into more than two months before the petition filed against him or by him, shall not be invalidated or effected by this act: Provided, that the other party to any such dealings and transactions had no notice of a prior act of bankruptcy, or of the intention of the bankrupt to take the benefit of this act."

The Act of Congress of March 2d 1867 has no express provision on the subject. The case is necessarily left to the legal effect of the assignment provided by the act. The 14th section enacts "that as soon as said assignee is appointed and qualified, the judge, or where there is no opposing interest, the register shall, by an instrument under his hand, assign and convey to the assignee all the estate real and personal of the bankrupt, with all his deeds, books and papers relating thereto; and such assignment shall relate back to the commencement of said proceedings in bankruptcy, and thereupon, by operation of law, the title of all such property and estate, both real and personal, shall vest in said assignee." The only and natural construction of these words is, that the assignment, no matter when made, shall take effect by operation of law, as if it had been made at the commencement of the proceedings, or on the day of filing the petition. It is un-

[Mays v. Manufacturers' National Bank.]

doubtedly well settled that of such an assignment by operation of law the whole world is bound to take notice: Hitchcox v. Sedgwick, 2 Vernon 156; where it was said that there was a difference where a man had divested himself of his estate by his own act, and where it was taken out of him by Act of Parliament, whereunto all persons are supposed to be parties, and are concluded by it: Callet v. De Gols, Cas. Temp. Talbot 65. The same principle was applied by this court to the case of an insolvent debtor under the Act of March 26th 1814 (6 Smith's Laws 195), which provided that "the trustee or trustees shall be deemed vested with all the estate of such debtor at the time of his or their appointment." "This divestment of his debt," said Duncan, J., in Wickersham v. Nicholson, 14 S. & R. 118, "was by positive law, and the assignment a notorious judicial act, of which all the world was bound to take notice. It is constructive legal notice, and as binding to every intent as actual notice to the individual." It was accordingly decided in that case that a payment to the insolvent, the day after his assignment and discharge, by one who had not actual notice of it, was not valid. We are compelled to apply this same principle to the case of a payment to a bankrupt bonâ fide made and without actual notice after the commencement of the proceedings—namely, the filing of the petition, to which time, by the express provision of the Act of Congress, the assignment relates.

It must be admitted that this is an unjust and cruel law; and the effect of it may be to make bankrupts of honest and solvent men, who are only desirous of fulfilling their legal obligations. That all the world has notice of a transfer by operation of law, in proceedings in bankruptcy, is a mere fiction—not true in reality—whatever care the law may take to give public notice through newspapers. All men cannot afford to take all the newspapers, and if they did, have not time to read all the advertisements. Life is too short, and other cares too pressing for that. The attention of Congress ought surely to be called to this subject, and some suitable provision made to protect those who deal honestly, in good faith, and without notice, with bankrupts.

There is, however, another important question which arises on this record. The proceedings in bankruptcy against August Born were commenced by filing the petition January 31st 1868, and he was adjudicated a bankrupt February 26th 1868. His bank account with the defendants below, which was all the evidence produced to charge them with the receipt and possession of any of his property, showed a balance from old book under date of February 6th 1868, and all the deposits made by him were subsequent to that date. Now, if we give the fullest effect to the relation of the assignment to the commencement of the proceedings, it must be held to operate in the same manner as if it had been then

[Mays *v.* Manufacturers' National Bank.]

made. It follows, logically, that it only transfers the property which the bankrupt then had. Of course we do not speak of fraudulent conveyances made by him previously. This is not only the literal construction of the act but accords with its spirit and policy. It is the most humane and liberal interpretation that the earnings and acquisitions of the bankrupt subsequent to the commencement of the proceedings shall be his own, subject to his eventual discharge. If he does not succeed in procuring that, they remain liable to execution or attachment by his former creditors. It is certainly good policy to hold out encouragement to continued effort and industry. Besides, if this is not the date of the transfer, what is? The adjudication or the discharge? A considerable period may elapse between the filing of the petition and either of these. If his acquisitions in the mean time are in any event to pass to his assignees, he will be likely to fold his hands in inactivity, content with the allowance made him by the law. It is true, that by the 16th section debts provable are those due at the time of the adjudication, but it is also true that by the 32d section the certificate of discharge is expressed to be " from all debts and claims which by said act are made provable against his estate, and which existed on     the day of     , on which day the petition for adjudication was filed." It would rather seem to follow that the adjudication was also meant to relate to the day of filing the petition, otherwise it is not easy to reconcile these provisions. In Re Charles G. Patterson, a bankrupt, in the District Court of the United States for the Southern District of New York, 6 Internal Rev. Rec. 157, Judge Blatchford, in an able and elaborate opinion, adopts and vindicates this construction of the Act of Congress. " The intent and purport of this provision" (§ 14), says he, " is, that the property which was the property of the bankrupt at the time of the commencement of the proceedings in bankruptcy, and no other property, shall vest in the assignee, and shall vest in him as of the time of the commencement of such proceedings, no matter when the assignment to the assignee is actually executed. It does not mean that the property, which is the property of the bankrupt at the time the assignment is executed, and also the property which was his property at the time of the commencement of the proceedings, shall pass to the assignee." He accordingly decided that a bankrupt cannot be examined as to property acquired or business done after the date of filing the petition. And this decision was followed by Judge Field, in the District Court of the United States for New Jersey, in Re Isaac Rosenfield, Jr., a bankrupt, 15 Pittsburg Leg. Jour. 245.

There was no evidence adduced in the court below to show that the balance in the bank, February 6th 1868, or the subsequent deposits, belonged to August Born, the bankrupt, on the 31st January 1868—the day the petition was filed. They may have

[Mays v. Manufacturers' National Bank.]

been given to him by friends—or bequeathed to him by will, or acquired by his own industry, after that date. The *onus* was certainly on the plaintiffs below to show affirmatively that they were his property at the time the assignment by relation took effect. They failed entirely to do this, and there was consequently no evidence for the jury to charge the defendants even with the balance which was found by the verdict.

Judgment affirmed.