## Case No. 5,536.

### In re GOODFELLOW.

[1 Lowell, 510;[1] 3 N. B. R. 452 (Quarto, 114);
3 Am. Law T. Rep. Bankr. 69; 1 Am. Law
T. Rep. Bankr. 179.]

District Court, D. Massachusetts. 1870.

BANKRUPTCY—PETITION BY ALIEN RESIDENT—EFFECT OF ADJUDICATION—FRAUDULENT CONVEYANCE IN FOREIGN JURISDICTION.

1. An alien residing in the United States may be adjudged a bankrupt on his own petition.
[Cited in Re Burton, Case No. 2,214; Re Ives, Id. 7,115; Allen v. Thompson, 10 Fed. 124.]

2. Such an alien, owing debts here, may petition as soon as his residence is acquired.

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

3. An adjudication of bankruptcy upon a voluntary petition is a conclusive finding that the petitioner is insolvent and owes more than three hundred dollars, but not that he is within the jurisdiction of the court in other respects.

[Cited in Re Dunkle, Case No. 4,160; Re Thomas, Id. 13,891.]

4. It seems, that an alien debtor who, when residing abroad, has made conveyances which would be preferences under our bankrupt law [of 1867 (14 Stat. 517)], and then within six months comes to the United States and goes into bankruptcy, is not entitled to his discharge.

[Cited in Re Marter, Case No. 9,143; Re Seeley, Id. 12,628.]

5. If such a debtor has made conveyances at his home, in New Brunswick, which are fraudulent at common law, and on a secret trust for himself, he cannot have his discharge in bankruptcy here.

In bankruptcy.

I. Knowles, Jr., for creditor.
C. A. F. Swan, for bankrupt.

LOWELL, District Judge. Joseph Goodfellow, the bankrupt, was born in the province of New Brunswick, and he resided there until last December. In 1868, he became a partner with one Stone, whose domicile was in New Hampshire, in a trade between the British provinces and Boston, and the firm owe debts here. In December, the bankrupt was arrested in Boston, and gave a recognizance, according to the law of the state, to appear before a magistrate within a certain time, and take the oath for the relief of poor debtors. He afterwards applied to take the oath, and pending the hearing thereon petitioned this court, on the 5th of January, to be adjudged a bankrupt, alleging that he resided in Boston, and had carried on business there for fourteen months next preceding the date of his petition. He was duly adjudged a bankrupt accordingly, but the first meeting has not been called, nor has an assignee been appointed. The creditor at whose suit he was arrested now petitions that the proceedings may be vacated for want of jurisdiction, alleging the debtor to be a non-resident alien.

The point is taken on behalf of the bankrupt that the adjudication itself is a conclusive finding of all the facts necessary to support it. No doubt the petition is conclusive evidence that the debtor is insolvent and desires to take the benefit of the act, and perhaps the fact that he owes $300 may be conclusively found by the adjudication; but upon a fact which goes to defeat the jurisdiction of the court over the supposed bankrupt, it cannot be so. Such a fact as that may be shown by plea and proof in any court by a person not estopped to show it, and it cannot be that the only exception is of the court in which the void proceedings themselves are pending. Nor is the adjudication binding as a judicial decree, which must be impeached, if at all, in a higher court. It is made ex parte, without notice to creditors, and is entirely under the control of this court, upon due proof that it ought to be annulled, at least in this stage of the cause.

The decision, then, depends upon the soundness in fact and in law of the petitioner's objections to the bankrupt's right to apply to this court, which are, that he is not a resident of Boston, and if he is, that he has not been so for six months, and in either case is not within the statute.

Section eleven makes every person residing within the jurisdiction of the United States who owes a certain amount of debts subject to the act, and it is not denied that resident aliens are here included. Judd v. Lawrence, 1 Cush. 531. If confirmation were needed, it is found in the latter part of the same section, which prescribes a special form of oath for citizens of the United States; clearly showing that some others than citizens are capable of being petitioners. But it is said that an alien must have resided for six months within the district before he can apply to the court. If the requirement were unqualified that the application must be in the district wherein the debtor has resided for the six months next before the filing of his petition, it might be a necessary inference, though one which would lead to most unfortunate consequences, that a debtor who had changed his residence within six months could not apply at all, notwithstanding the previous words, which include all persons residing within the jurisdiction of the United States. But the qualification is not absolute, it is for the six months, "or for the longest period during such six months," and the meaning is plain that, if the debtor has changed his residence within the United States during the six months, he must apply in that district in which his residence has during that time been the longest. And if he has had but one residence within the United States of less than six months, his application in the district where he resides is made in the district in which he has resided the longest, though it be made on the day after his residence was established. As if a citizen of the United States residing abroad, but trading here, returns to his native domicile and files his petition immediately. Or in the case before Judge Blatchford, where a firm had carried on business in New York for only two months out of the six. In re Foster [Case No. 4,962]. If, then, a person resides within the United States, and no district can be shown in which he has had a longer residence (within six months) than that in which he petitions, he has chosen the proper district.

I assume, for the purposes of this case, as the construction least favorable to the jurisdiction I am upholding, that the residence mentioned in the first part of section twelve is equivalent to domicile, which was its meaning under the insolvent law of Massachusetts (McDaniel v. King, 5 Cush. 469);

and that an alien who has never lived here at all, though he may have traded here through agents, could not be made bankrupt here even if he might happen to be temporarily within the jurisdiction. The law is otherwise in England, because strangers or aliens have been included in terms, in all their statutes of bankruptcy since that of James I. But our statute has followed that of Massachusetts in this respect, though in the matter of this six months, or longest period, it is based on that of England. But it is not necessary to pass upon this point, nor to inquire whether any residence short of the acquisition of a domicile would under any circumstances, fall within the act, because, upon the evidence, which comes wholly from the debtor himself, who was examined orally before me, and which I have carefully considered, but need not recapitulate, I feel bound to hold that he was domiciled here on the 5th of January. The creditor's petition is dismissed, and the cause will proceed before the register.

The case was afterwards brought on again in 1870 upon specifications, filed by the same creditor, in opposition to the bankrupt's discharge; and there was evidence tending to show that he gave preferences to certain creditors in New Brunswick while he lived there, within six months of his petition to the court here, and that he had made a deed of a farm to his brother-in-law to delay, hinder, and defraud creditors generally.

I. Knowles, Jr., for opposing creditor.

C. P. Hinds, for bankrupt.

LOWELL, District Judge. It has been argued in behalf of the bankrupt, that, granting the preferences to have been made, and to be within the period contemplated by the statute, still they were made while he was a resident of the province, not subject to our law and not contemplating bankruptcy under it, and that in such a case the law cannot affect him; and as it is not shown that the acts were illegal when and where they were done, they must be presumed to have been legal, and if so, they are good wherever they may be sought to be impeached. There is much force in this argument, and, indeed, it would be irresistible if the question were of the title to the goods or money conveyed in preference, or of any criminal responsibility; but the question here is, whether a person who applies to be discharged from his debts must not show that he has complied with the conditions imposed by law, even although he was not aware of them and was not subject to the law when he did the acts. Congress has an undoubted right to annex such conditions as it chooses to the grant of a discharge. It might enact, for instance, that certain things done before the passage of the act should be ground for refusing it. And this seems to me an analogous case. The statute says:

"You shall not be released if you have given certain preferences." Now, preferences are not necessarily illegal; they are the payment of just debts. It depends altogether upon the fact of subsequent bankruptcy within a certain time whether they turn out to be legal or not. The fact that the transaction is legitimate between the parties and even against all the world is not important, if the intent existed in the mind of the debtor. The act requires an equal distribution of the estate, and if this fails through the act of the debtor, as, for instance, if he have lost a part of it in gaming, the discharge is not granted. It is not a punishment; it is not retroactive. It is simply a condition precedent. Were this otherwise, creditors might be treated very unequally and unjustly, and yet lose all remedy. Let us suppose a non-resident alien trading with this country. If there is any bankrupt law in his own country, he must divide all his estate equally among his foreign as well as his domestic creditors; for that is the main feature of all bankrupt laws throughout the civilized world. If he does this he obtains a discharge, which is good throughout the world, according to the better opinion. I am not now speaking of a discharge by the authority of one state of this Union, which is limited by the federal constitution. Speaking generally, the discharge is good everywhere, and all creditors are treated alike. But suppose there is no bankrupt law. By the common law, a debtor may prefer any one or more creditors, and he naturally favors those at home, but he gets no binding discharge from all his debts. Then he comes here, and says, "I have divided my property as I chose, in the absence of a bankrupt law at my former residence, and now I will obtain the advantages of your bankrupt law without its disadvantages, and thus obtain the benefit of both jurisdictions." I have referred to such a case, which appears to be much like the present one, in order to show my view of the intent of congress, and the reasons for it. If the estate of the debtor has been disposed of in accordance with the statute, a discharge shall be granted; otherwise, not. It may be said to be a great hardship that a foreign merchant should be required to conform to laws that he knows nothing of, as, for instance, to keep books of account, which the laws of his own country do not require him to keep. The answer is, that in coming here for the benefits of a discharge from his debts he adopts the law, and must take it as he finds it. Indeed, it is not easy to see any distinction between citizens and aliens in this respect. A citizen who owns property and carries on business in other countries, cannot do acts which are perfectly lawful there, and still obtain the benefits of our statute, if the acts are such as will be a bar to the discharge.

I do not, however, find it necessary to pass conclusively upon this question of preference.

because the evidence shows a conveyance of a farm by the bankrupt to his brother-in-law under very suspicious circumstances; not as a preference, but for purposes of concealment. It is testified that the deed was made at a time and under circumstances when it is most probable it was intended to save it from being taken on execution. The explanation of the debtor is not satisfactory. He says he gave the deed merely as security for certain liabilities; but it is proved that they had already been secured. Taking all the facts and circumstances it seems to be made out by the weight of the testimony that this conveyance was in fraud of creditors generally. I cannot assume that such an act is lawful anywhere. And if it were, still the petitioner could not be discharged, because the presumption is that he has still a subsisting interest in the farm which he has not procured to be surrendered to his assignee. Discharge refused.