## EDWARD B. ISETT

*v.*

## JOHN M. STUART.

1. JURISDICTION—*of circuit court.* Circuit courts in this State have general jurisdiction of all cases at law and in equity, without regard to the origin of the right or source of title.

2. SAME—*cases arising under Bankrupt Act.* The State courts have jurisdiction to aid in the enforcement of the bankrupt laws of the United States, and may set aside a conveyance or mortgage made fraudulent by such laws, at the suit of the assignee in bankruptcy.

3. SAME—*under acts of Congress.* In cases affecting the rights of individuals under the laws relating to the sale of the public lands, the laws relating to patents and copyrights, and in many other cases determining the ownership of property or rights under contracts, it is indispensable that the State courts shall ascertain and determine what the rights of the parties are, as defined by the acts of Congress under which they originate.

4. BANKRUPTCY—*jurisdiction of the person.* On the petition of all the members of a partnership, except one, to have the firm declared bankrupt, the only service on the partner refusing to join in the petition was a personal service made in another State, and beyond the jurisdiction of the court in which the proceedings were had: *Held,* that the court acquired no jurisdiction over such partner, and the adjudication as to him was void.

5. PROCESS—*where it may be served.* The process of a court has vitality, and may be enforced anywhere within its jurisdiction, but beyond this it has no vitality, and a service beyond the jurisdiction of the court confers no jurisdiction over the person of the defendant.

APPEAL from the Circuit Court of Rock Island county; the Hon. GEORGE W. PLEASANTS, Judge, presiding.

Mr. J. SCOTT RICHMAN, and Messrs. OSBORN & CURTIS, for the appellant.

Mr. CHARLES A. PEABODY, and Messrs. CONNELLY & McNEAL, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

John M. Stuart, assignee in bankruptcy of Thomas M. Isett, exhibited his bill in chancery against Thomas M. Isett and

Edward B. Isett, to set aside a mortgage, from the former to the latter, alleged to have been made in fraud of the Bankrupt Act.

Notice was given to the defendants in the bill by publication, and decree rendered by default in favor of the complainant; but appellant was subsequently, on his petition, permitted to appear and defend, whereupon he filed an answer, putting in issue the material allegations of the bill, denying that the mortgage was made in fraud of the Bankrupt Act; that Thomas M. Isett was ever legally adjudged a bankrupt, or that the court assuming to so adjudge had any jurisdiction for that purpose, and alleging that the mortgage was made in good faith, without notice of any proceedings in bankruptcy, for a full, valuable consideration. Evidence was heard, and the court, thereupon, reaffirmed its former decree, with the modification that the mortgage be held void only as against the complainant's rights in the land.

It is objected that the court below had no jurisdiction of the subject matter of litigation; that the remedy of the complainant was in the Federal courts exclusively, because State courts have no jurisdiction to aid in the enforcement of the bankrupt laws of the United States. We have been unable to find any decision of the Supreme Court of the United States on the question, and there are decisions by State courts of the highest respectability both ways. *Voorhies* v. *Frisbie*, 25 Mich. 476, and *Brigham* v. *Clafflin*, 31 Wis. 607, sustain the objection, while *Cook* v. *Whipple*, 55 N. Y. 150, *Stevens* v. *The Mechanical Savings Bank*, 101 Mass. 109, *Ward* v. *Jenkins*, 10 Metc. 583, *Hastings* v. *Fowler*, 2 Carter, (Ind.) 216, *Brown* v. *Hall*, 7 Bush, 66, *Mays* v. *Manf. Nat'l Bank*, 64 Pa. 74, and *Cogdell* v. *Exurm*, 69 N. C. 464, hold it untenable, and, we think, they announce the correct rule.

Circuit courts, in this State, have general jurisdiction of all cases at law and in equity, and this without regard to the origin of the right or source of title. Titles derived from the general government, and contracts made in other States or in foreign

governments, are the frequent subject of litigation, without question of the jurisdiction of the courts.

No question is made of the right of Congress to enact a general bankrupt law, or that, when enacted, it is obligatory upon all the citizens of all the States and all the territories in the Union. Being thus obligatory, no State court can nullify it or refuse to enforce it in a proper case. It makes the execution of a deed or a mortgage, although in good faith, after the filing of the petition in bankruptcy, fraudulent and void as to creditors.

If a deed or mortgage be made without a sufficient valuable consideration, and creditors are thereby defrauded, it is conceded a court of equity has jurisdiction, at the suit of an assignee in bankruptcy, to set it aside. The only difference between such a case and the present, is in the elements which render the conveyance fraudulent in law. If, therefore, it be true that the jurisdiction of the court is not limited by the origin of the right or the source of the title, it is impossible that it can make any difference whether the law, by virtue of which the instrument is declared void, is the common or statute law of the State or the statute of the United States. In either case it is the supreme law of the land, fixing the rights of the parties in regard to the property in litigation.

In cases affecting the rights of individuals under the laws relating to the sales of the public lands, the laws relating to patents and copyrights, and in many other cases, in determining the ownership of property or rights under contracts, it is indispensable that the State court shall ascertain and determine what the rights of the parties are, as defined by the acts of Congress under which they originate. It has never been supposed this was an usurped jurisdiction, but it has always been conceded that in such cases the State courts act upon subject matters within their jurisdiction, and adjudicate rights as determined by laws which, although not enacted by the State legislature, are, nevertheless, supreme, and, therefore, as obligatory in respect to persons and property affected by them within the State, as are laws enacted by the State legislature

in relation to matters where its authority is supreme with reference to persons and property affected by them.

This is not an attempt to administer the bankrupt law through a State court, but simply to ascertain and declare the rights of parties with reference to property, after an adjudication in bankruptcy in the proper court and in consequence of that adjudication.

We can not yield our assent to the position, although it has been assumed by courts for which we entertain profound respect, that the question involved is, whether we shall enforce the penal laws of the United States. Wherein does the enforcement of rights, as determined by the bankrupt law, differ, in principle, from the enforcement of rights as affected by the statutes for the prevention of frauds and perjuries? We are unable to discover any distinction. Under both, certain contracts that would otherwise be held valid can not be enforced, and the rule of evidence is so changed as to make certain things evidence of fraud which were not so deemed by the common law. No penalty is, in either case, imposed for doing or not doing—but in both, the doing of the thing is simply prohibited, and no right can be enforced in violation of the prohibition.

The petition under which the adjudication in bankruptcy was had, was addressed to the Hon. Samuel Blatchford, judge of the District Court of the United States for the Southern District of New York, by which court the judgment was rendered. The petition was filed by partners of Thomas M. Isett, praying that the members of the firm be declared bankrupt. Isett refused to join in the petition, and the only notice he had of the proceeding was by personal service made on him in Jersey City, in the State of New Jersey, beyond the jurisdiction of the Circuit Court of the United States for the Southern District of New York.

Was this service sufficient to give the court jurisdiction to adjudicate as against Isett?

Section thirty-six, of the Bankrupt Act, provides that a partnership may be declared bankrupt upon the petition of one or more or its members. Section ten, of the same act, author-

izes the justices of the Supreme Court of the United States to frame general orders for regulating the practice and procedure in bankruptcy. Under this authority they framed order No. 18, which is as follows: "In case one or more members of a co-partnership refuse to join in a petition to have the firm declared bankrupt, the parties refusing shall be entitled to resist the prayer of the petition in the same manner as if the petition had been filed by a creditor of the co-partnership, and notice of the filing of the petition shall be given to him in the same manner as provided by law and by these rules in the case of a debtor petitioned against." Section forty, of the Bankrupt Act, provides how notice shall be given a debtor petitioned against, as follows: "A copy of the petition and of such order shall be served on such debtor by delivering the same to him personally, or leaving the same at his last usual place of abode, or if such debtor can not be found, or his place of residence ascertained, service shall be made by publication, in such manner as the judge may direct. No further proceedings, unless the debtor appear and consent thereto, shall be had until proof shall have been given, to the satisfaction of the court, of such service of publication."

In *Stuart, Assignee,* v. *Hines,* 33 Iowa, 60, the Supreme Court of Iowa held this particular service good, on the ground that personal service might be made anywhere. The court thought it impossible it could be said Isett was not found, because the return showed he was found, and, therefore, if such service was not good, no service could have been made on him.

We are unable to yield our assent to this conclusion. This statute, as we think, should receive a like construction as is given to statutes having similar provisions in relation to attachment and chancery proceedings in State courts. We are not aware that it was ever held in any case, under such a statute, that it is necessary to pursue the party wherever he may be heard of, to lay a basis for a return or an affidavit that he can not be found. The process of the court has vitality, and may be enforced wherever its jurisdiction extends, but beyond this it has no validity. The words "not found," in such cases, are

to be understood with reference to the place where there is authority to make service, and it is not to be presumed that search is to be made elsewhere. We are clearly of opinion there was no authority to make service of the writ beyond the jurisdiction of the court issuing it, and that the return "not found" could have been lawfully made when it was ascertained Isett was beyond the limits of the Southern District of New York. The same view has been expressed by the Circuit Court of the United States for the Fifth Circuit, in the case of *Ala. and Chat. R. R. Co.* v. *Jones,* 5 B. R. 97; Bump on Bankruptcy, 6 ed. 623.

But it is contended, the law did not require that any service of notice should be made on the non-consenting partner, and the order of the justices of the Supreme Court does not repeal the law.

The proceeding was adverse to the non-consenting partner, and upon principle he was entitled to notice. We regard the order itself as a judicial construction by the highest tribunal having authority to adjudicate upon the question, that the non-consenting partner is by the spirit of the act in the same situation as the debtor petitioned against, and therefore entitled to the same notice.

However, by section fourteen of the Bankrupt Act, it is provided that "a copy, duly certified by the clerk of the court, under the seal thereof, of the assignment made by the judge or register, as the case may be, to him, as assignee, shall be conclusive evidence of his title as such assignee to take, hold, sue for and recover the property of the bankrupt," etc. And it is insisted that this section prohibits all inquiry into the jurisdiction of the court.

This is not tenable. If there was no jurisdiction there could be no judgment, and hence no assignment. All orders to that effect would be nullities. The question of jurisdiction was proper to be inquired into, and would have been so even had the record on its face have shown that the court had jurisdiction, according to recent rulings of the Supreme Court of the

United States. *Thompson* v. *Whitman*, 18 Wallace, 457; *Knowles* v. *Gas Light and Coke Co.* 19 id. 58.

Our conclusion is, the court had no jurisdiction to adjudge Isett a bankrupt, and that all proceedings thereunder were therefore void.

That the service was made in Jersey City, is shown by the face of the record, and any presumption that might possibly arise that the court had other and sufficient evidence of lawful service before it, is excluded by positive proof that no other service was made.

The decree of the court below is reversed.

*Decree reversed.*