## JOHN P. CHELLIS v. GEORGE W. COBLE.

1. POSSESSION; *Evidence; Value of Improvements.* Where the title to real estate is claimed by virtue of fifteen years' possession under a claim of title, testimony thereunder is competent to show the nature and value of the improvements made thereon during said possession.

2. EVIDENCE — *Admission, not Material Error.* Where evidence, otherwise competent, has been admitted over the objection of a party, without first laying a proper foundation for its admission, and where it further appears from the whole record that said evidence admitted did not materially prejudice the party objecting thereto, *held,* that the admission is not sufficient error to require a reversal of the judgment.

3. LIMITATION — *Statute to be Pleaded.* Where the pleadings do not on their face show that the cause of action, or the relief sought, is barred by the statutes of limitation, said statutes must be specially pleaded.

4. BANKRUPTCY — *Adjudication of Title.* Where a petition is filed in bankruptcy, and the bankrupts scheduled certain real estate as a part of their assets, and said real estate is conveyed to the assignee of said bankrupts; and afterward said assignee conveys said real estate in settlement of a claim against said bankrupt estate, and said settlement and conveyance is confirmed by the bankrupt court: *Held,* That such settlement, sale and confirmation is not an adjudication that the property so conveyed was the property of the bankrupt estate when scheduled as assets by the bankrupts, but only that whatever title said bankrupts had to said real estate legally passed to the purchaser by said sale and conveyance.

5. EQUITABLE ESTOPPEL — *What Must Appear.* In order to constitute an equitable estoppel with reference to the title of property, it must appear that the party to be estopped has made admissions or declarations, or done acts with the intention of deceiving the other party with regard to the title, or with such carelessness or culpable negligence as to amount to a constructive fraud, and that at the time of making the admissions or declarations, or of doing the acts, he was apprised of the true state of his title, and that the other party was not only destitute of all knowledge of the true state of the title, but also of all convenient or ready means of acquiring such knowledge.

6. AGENT — *Declarations Bind Principal, When.* Before the declarations of an agent can bind the principal, it must be shown that said declarations were made in and about a matter over which the agent had authority from the principal to act, and that said agent was acting under and by virtue of his authority as such agent.

*Error from Dickinson District Court.*

ACTION brought by *George W. Coble* against *John P. Chellis*, now plaintiff in error. The material facts presented by the record are as follows: In 1860, William W. Stickney and Elliott T. Merrick were the joint owners of the land in controversy. On December 20, 1860, Merrick and Stickney sold and conveyed to plaintiff in error an undivided three-fifths interest in all the lands described in plaintiff's petition, and the deed of conveyance was recorded in Dickinson county, on the 25th of September, 1861. On December 10, 1873, Merrick and Stickney mortgaged this land, with a large amount of other lands, to Amos Tuck, who sold and assigned said mortgage to Augustus Sumner. On the 9th day of December, 1874, Merrick and Stickney were duly adjudged bankrupts in the United States district court for the eastern district of Missouri, and in a schedule of their assets they incorporated the land in controversy. At the time they were decreed bankrupts, Sumner was the owner of the Tuck mortgage, and no part of it had been paid. On the 14th day of July, 1874, Sumner proved his claim in the said district court, and it was adjudged a lien upon the land in controversy, together with a large amount of other lands. On the 20th day of October, 1875, by an order of the said district court, and in settlement of a part of Sumner's claim, the assignee conveyed the land described in the mortgage to Sumner. Afterward Sumner entered into a contract of sale of the land with one Stevens. The land, until 1877, was wild, unimproved, and unoccupied, at which time Stevens, by his contract with Sumner, went into possession thereof, and put about one hundred acres in cultivation. Afterward Stevens assigned his contract with Sumner to Coble, defendant in error, who went into possession of the land and continued in possession up to the commencement of this action. In 1881, Sumner conveyed the land by deed to Coble. This deed was recorded on the 17th day of November, 1881. At the time Merrick and Stickney were adjudged bankrupts they were indebted to the plaintiff in

error on certain promissory notes, a part of which notes was secured; and on September 23, 1874, and November 16, 1874, Chellis made proof of his claim against Merrick and Stickney, at his home in New Hampshire, and filed the same in said district court. On the 19th day of July, 1875, Chellis duly appointed William W. Stickney, one of the said bankrupts, as his attorney in fact to collect, settle, or compromise his claim and demands against Merrick and Stickney; and afterward Stickney accepted the securities held by Chellis in full satisfaction of his claim against the bankrupts. Both plaintiff and defendant claim title through Merrick and Stickney. Trial by the court, at the February Term, 1885; findings and judgment for plaintiff. The defendant brings the case here.

*Stambaugh, Hurd & Dewey,* for plaintiff in error.

*John H. Mahan,* and *C. F. Mead,* for defendant in error.

Opinion by CLOGSTON, C.: The record in this case presents but few disputed questions of fact, and those of but minor importance. But two errors are presented as occurring at the trial, and these are, first: In the introduction and admission of evidence on behalf of the plaintiff as to the amount of improvements made upon the land in controversy after its purchase and possession by the plaintiff. In the admission of this evidence we see no error. One of the allegations in the plaintiff's petition was that he was in possession of the premises, and had been for more than fifteen years, and claiming title thereto. This evidence was competent to show this possession, and in showing this he might show what things he had done — what improvements he had made to establish his claim of ownership and his possession.

1. Possession; evidence; value of improvements.

The second error alleged is in the introduction by plaintiff below of the deposition of defendant, plaintiff in error, taken in an action in which plaintiff was plaintiff, and one Stevens was defendant. This deposition was doubtless offered as the

declaration of Chellis as to the facts connected with this land. The facts sought to be established, or the admissions made, were that Chellis long before the commencement of this action, knew that some one was in possession of this land, and was paying the taxes thereon. The admission of this deposition was error. The record shows that there was no foundation laid for the testimony; and while it was offered as the declarations of Chellis, or his admissions, it was nowhere shown that Chellis made these declarations, or that the deposition was written by him or signed by him. This preliminary proof was necessary before the deposition could be offered in evidence. But supposing this to be true, the next inquiry is, was this evidence of such a character as to prejudice the interests of Chellis? Chellis claimed to be the owner of this land, and his claim was founded upon his purchase from Merrick and Stickney, and if he had any interest therein it was by virtue of that conveyance. If he had not been divested of that title, then it could make no difference that some one, without authority and right, had gone upon the land and made improvements and paid the taxes. That could not divest Chellis of his title except by the statute of limitation; and even had there been a sufficient foundation laid for it, it would not have been competent or material testimony tending to establish any of the allegations in the plaintiff's petition.

2. Evidence— admission, not material error.

The only remaining question then is, Was the judgment sustained by sufficient evidence, and is it according to law? The motion for a new trial alleged the negative of this proposition as a reason why a new trial should be granted. Upon what theory the court rendered judgment in this action we are unable to say. The findings of the court were, that the allegations of the plaintiff's petition and reply were true, and that the defendant had no title to the land by reason of his deed from Merrick and Stickney; and upon these findings the court rendered judgment for the plaintiff below. The plaintiff's petition alleged title to the property by reason of his purchase and

36 — 37 KAS.

deed from Sumner, and Sumner's title through the bankrupt proceedings. The defendant answered thereto, first, by a general denial; and second, alleged title in himself to a three-fifths interest by virtue of a deed from Merrick and Stickney, in 1860. To this answer plaintiff replied: First, by a general denial; second, that the defendant's deed was void, and never was of any effect or force, and was without consideration; third, that the defendant's title and claim to the land was barred by the possession of the plaintiff under color of title for fifteen years; fourth, that the defendant's claim of title and interest in the land was barred, and that he was estopped from setting up or claiming any title thereto by reason of the mortgage of Merrick and Stickney to Tuck; the assignment of the same to Sumner; the adjudging of Merrick and Stickney as bankrupts; the settlement by the assignee with Sumner, and the conveyance of the land in controversy to Sumner by the assignee; the confirmation of said proceedings by the bankrupt court; the acceptance of said conveyance by Sumner in full satisfaction of $8,573 of said indebtedness in said Tuck mortgage; the recording of said deed of assignment by said assignee to Sumner, in 1875, in Dickinson county; that said defendant was a creditor of said Merrick and Stickney, and duly proved his claim against said bankrupt estate in said district court, and thereby became a party to the record and proceedings in bankruptcy, and as such party well knew of the proceedings therein, and the sale and transfer of the land in question to Sumner, in settlement of his claim; that said land had been scheduled as assets by said bankrupts, and that said defendant, with a full knowledge of all of said proceedings, made no objection thereto, and allowed and permitted said Sumner to take said land as the property of said bankrupts in satisfaction of his mortgage debt, in good faith, and that said defendant is estopped and debarred from setting up his said deed and claiming any title or interest in said land by reason of said proceedings. The defendant in error now insists that the allegations of his petition and reply were sustained so far as the same relate to the mortgage to Tuck by Merrick and Stickney, the

assignment of the same to Sumner, and Sumner's settlement and deed of conveyance from the assignee in bankruptcy, and his title from said Sumner by deed, and possession thereunder. It will be seen by this claim that the fifteen-years statute of limitation is abandoned; in fact, the evidence failed to establish adverse possession for fifteen years.

The next question presented is the legal effect of the schedule made by Merrick and Stickney as bankrupts, including this land as part of the assets, and the settlement by the assignee with Sumner, and his transfer of the land in settlement of the Tuck mortgage. Defendant in error insists that this was an adjudication, and as such that it is entitled to the same protection as that of all other courts of competent jurisdiction. If this is true, then Chellis's title was wiped out by that judgment. Defendant insists that Chellis was a party thereto; that by reason of his filing a claim against the bankrupts and his settlement of said claim with said bankrupts, that he was bound to take notice of the entire proceedings in bankruptcy, and whatever of those proceedings affected his interest he must take notice of and defend against, or be forever estopped from claiming title to the property. There is no pretense that Chellis had actual notice of these proceedings; but it is claimed, first, that he had constructive notice of what the record shows by being a party to said proceedings; and second, by his having appointed Stickney his agent or attorney in fact to settle, compromise and adjust his claims, and that whatever knowledge Stickney had was notice to Chellis. If this claim is true, then Chellis had actual knowledge, for whatever was knowledge to the agent was knowledge to the principal, if within the line and scope of his authority.

In addition to the foregoing, the defendant insists that if plaintiff in error was not estopped by these proceedings from claiming title, then he is barred by the two-years statute of limitation provided for in the bankrupt law, which is in substance as follows:

"No suit at law or in equity shall in any case be maintainable by or against any person claiming an adverse interest

touching the property and rights in property of the bankrupt, transferable to or vested in such assignee, in any court whatsoever unless the same shall be brought within two years of the time the cause of action accrued."

The first question to be considered is, was the defendant barred by this statute of limitation? If he was, that disposes of the action. The plaintiff in error insists that if this statute was in force, then it was not pleaded by the defendant, and therefore he cannot take advantage of it. By a careful examination of the plaintiff's reply, we find no allegation of this kind; nowhere does he directly point out or claim that by reason of this statute of limitation the defendant is barred. He pleads the fifteen-years statute of limitation, and alleges it as a separate defense; in reply he pleads *res adjudicata* and estoppel, and alleges that by reason of the decision of the bankrupt court setting aside this land to Sumner, in satisfaction of his claim, that this was such an adjudication as would bind the defendant, who was a party to that action. Second, that the defendant was estopped from claiming title to the land, even though he was not barred by this decree or judgment, for the reason that he had full knowledge of the transaction and of the good faith of Sumner, and with this knowledge kept silent, and is therefore barred from claiming title thereto; but nowhere in this reply does he suggest that he claimed by reason of the lapse of two years from the sale by the assignee to Sumner, and that by reason of such lapse of time the defendant is barred from claiming title by said two-years statute.

3. Limitation—statute to be pleaded.

To avail himself of this statute he must specifically plead it, and not having done so, he cannot now claim the benefit of it. Then it is not material for us to inquire whether or not this statute would have protected the plaintiff if properly pleaded.

We shall now pass to the remaining questions: Was this schedule of the property to the assignee and the sale and transfer by the assignee to Sumner, and the confirmation thereof by the court, an adjudication of the claim of the defendant in error? It is not claimed by the plaintiff in error that, if

the matter had been properly presented to the bankrupt court all the questions in relation to the title might not have been settled by that court; and when so presented to the court that the judgment would not have been as binding as if rendered in any other proceeding; but in this case, as far as shown by the record, no such presentation of the facts was made, by which the court could or would have passed upon the question of title. The bare fact that both Sumner and Chellis held claims against the bankrupts; that both filed their claims and both claims were compromised, not apparently conflicting with each other; no controversy between the parties; no common claim upon any of the property in controversy; no question as to which of the claimants should have this or that property; no question presented to the court as to what interests the bankrupts had in any of the property; and yet under this presentation it is claimed that this was an adjudication of the rights of the parties. This question has been passed upon by this court in *Wilkins v. Tourtellott,* 28 Kas. 825, in which it was said:

4. Bankruptcy —adjudication of title.

"But the mere fact that the assignee of his own volition scheduled it, and upon its own application obtained an order for its sale, does not conclude the bankrupt. All that the order of the court determined is the fact of bankruptcy, the regularity of the proceedings, and that whatever title the bankrupt had at the time of filing the petition in bankruptcy has been transferred to the purchaser. There is no warranty of title in a sale by the assignee in bankruptcy, any more than in any other judicial sale."

(See also *In re Goodfellow,* 1 Lowell, 510; *Hynson v. Burton,* 5 Ark. 492; *Mays v. Manufacturers' Bank,* 64 Pa. 74.)

From these authorities, under the facts of this case, there was no such adjudication as will bind the plaintiff in error from claiming title.

We now pass to the last question: Is the plaintiff in error estopped by reason of his being a party to the proceedings, or by the knowledge possessed by Stickney, his agent? We think not. It is a well-settled rule that to constitute estoppel of this character with respect to

5. Equitable estoppel — what must appear.

the title of property, such as will prevent a party from asserting his legal rights, and the effect of which would be to transfer the enjoyment of property to another, the intention to deceive and mislead, or negligence so gross as to be culpable, should be clearly established. Judge Story says: "In all this class of cases the doctrine proceeds upon the ground of constructive fraud, or of gross negligence, which in effect implied fraud." The evidence in this case shows that Chellis had no actual knowledge that Merrick and Stickney had mortgaged that property to Tuck, and no knowledge that they had included this land in a list of their assets, and that the same was turned over to Sumner in satisfaction of his secured claim or mortgage on the land by the assignee. True, Stickney had full knowledge of these facts. He had this knowledge independent of his connection with the bankrupt proceedings as the agent of Chellis. None of this information came to him by reason of such agency, or by any act to be performed by him for Chellis. It was a knowledge he had independent of the settlement of the Chellis claim — knowledge that he possessed because of the business transacted by himself. Then how can it be said that this knowledge must bind the plaintiff in error? He had given no power of attorney to transact or bind in any manner, save and except to compromise and settle his claim with the assignee. What fraud is brought home to him? He made proof of his claim at his home in New Hampshire; was not present at the transaction of any of the business connected with the bankrupt estate. But counsel insist that the law implies a knowledge of whatever took place in the bankrupt proceedings. That is true so far as the matters connected with the transactions in which he was interested or was bound to be interested by virtue of his claim against the estate, and no further. (*Davis v. Davis*, 26 Cal. 23; *Palmer v. Meiners*, 17 Kas. 483; *Brant v. Virginia Coal & Iron Co.*, 93 U. S. 326.)

6. Agent—declarations bind principal, when.

Again, Sumner did not accept this land in his settlement by virtue of any declaration or act or omission on the part of Chellis, nor in fact upon the declarations or acts of Stickney;

but he did it because it was included in his mortgage. He was resting secure, believing that Merrick and Stickney had a title to the land. He perhaps believed that from the fact that Merrick and Stickney had executed this mortgage to Tuck; but had he investigated the facts and taken the ordinary precaution to look up the records of Dickinson county, he would have been informed that Chellis had a clear title to a three-fifths interest in the land. Now he asks that he be protected when he exercised no diligence to protect himself. As we said in the start, the facts in this case are not in dispute, and as disclosed by the record they show an entire want of testimony in support of the judgment pronounced by the court.

It is therefore recommended that the judgment of the court below be reversed.

By the Court: It is so ordered.

All the Justices concurring.